I propose to consider only so much of the case as involves the question whether Confederate treasury notes, which were paid for the land, were an illegal consideration. For, very clearly, if the consideration was illegal, the contract will not be enforced in this court. I shall treat it as a drylegal question.
A contract is not void merely because it tends to promote illegal or immoral purposes. Hilliard on Sales, 376; Armstrong v. Toler, 11 Wheat., 258; Story Conflict of Laws, 258.
A contract for the sale of a house and lot is not vitiated by the fact that the vendor knows, at the time of making it, that the vendee (206) intends it for an immoral or illegal purpose. Armfield v. Tate, 29 N.C. 259.
A sale of goods is not void although the seller knows that they are wanted for an illegal purpose, unless he has a part in the illegal purpose.Hodgson v. Temple, 5 Taunt, 181; in which case MANSFIELD, C. J., says: "The merely selling goods, knowing that the buyer will make an illegal use of them, is not sufficient to deprive the vendor of his just right of payment." In Dater v. Earl, 3 Gray, 482, the Court says: "If the illegal use to be made of the goods enters into the contract, and forms the motive or inducement in the mind of the vendor or lender *Page 147 
to the sale or loan, then he can not recover, provided the goods or money are actually used to carry out the contemplated design; but bare knowledge on the part of the vendor that the vendee intends to put the goods or money to an illegal use, will not vitiate the sale or loan, and deprive the vendor of all remedy for the purchase money."
Where goods are bought from an enemy, even in his own territory, by a citizen of the United States, the sale is valid, and the price may be recovered, although the act might be a misdemeanor, and the property liable as prize. Coolidge v. Inglee, 13 Mass. 26. Authorities are abundant to the same effect.
It will be seen, therefore, that a contract is not void because there is something immoral or illegal in its surroundings or connections. And yet it is equally certain that a contract is void when the consideration is illegal or immoral. What, then, is the criterion? Probably the following cases will show the dividing line: Goods were sold to a man who the vendor knew of the design: Held, that the contract intended to smuggle them and defraud the revenue, and was valid, and that the vendor could recover the price. Holman v. Johnson, Cowp., 341. Goods were sold to a man who intended to smuggle them and defraud the revenue, and the vendor not only knew of the purpose, but put (207) them up in a particular manner, so as to enable it to be done: Held, that the contract was void, and that the price could not be recovered.Briggs v. Lawrence, 3 Term R., 454. Now what is the difference between the two cases? None! — except that in the latter case it was part of the arrangement, and entered into the intent of the parties that the smuggling should be done. All these authorities show that the intent of the parties to accomplish the illegal thing is necessary to vitiate the contract; and therefore, in the case before us, unless the intent of the parties in their contract was to aid the rebellion, the fact that it did so (if it did), by giving currency to the notes, does not vitiate the contract.
It is not pretended that the Confederate treasury notes were of novalue. It is conceded that they were of value, and that, at the time of the sale in 1862, less than two dollars of the notes would buy one dollar of gold. But it is contended that although of value they were illegal. In what sense were they so? In no case can the thing used as a consideration, of itself and independent of the intention of the parties, invalidate the contract, if the thing be of value; unless, perhaps, by express statute. There is nothing which may not be turned to mischief in its use, as poisons, deadly weapons and the like; but still their sale is a sufficient consideration to support a contract, unless it be the intent of the sale to do mischief. Randon v. Toby, 11 Howard U.S., 493, is very strong in point. In that case Africans had been *Page 148 
imported and sold as slaves, which is forbidden by law. The vendor brought suit for the price of one which he had sold, and the defense was that the consideration was illegal. The court says: "The plea that the notes were given for African negroes imported into Texas after 1833 is unavailable. On the argument here, it was endeavored to be supported on the ground that the notes were void, because the (208) introduction of African negroes into Texas was contrary to law. If these notes had been given on a contract to do a thing forbidden by law, undoubtedly they would be void. Neither of the parties had anything to do with the original contract, nor was their contract made in defiance of law. The crime committed by those who introduced the negroes into the country does not attach to those who may afterwards purchase them. As respects the defendant, therefore, he has received the full consideration of his notes." And then follows this strong language by the court: "If the defendant should be sued for his tailor's bill, and come into court with the clothes made for him on his back, and plead that he was not bound to pay for them, because the importer had smuggled the cloth, he would present a case of equal merits, and parallel with the present; but he would not be likely to have the verdict of the jury or the judgment of the court."
So in the case before us, it is conceded that it was illegal to issue the treasury notes, just as it was illegal to import the negroes; but the illegality is in the issuing in the one case and in the importing in the other, and does not attach to those who afterwards use the thing issued or imported. It was insisted, in the argument before us, that the value of the treasury notes depended upon their circulation, and that the parties, by using them in their contract, aided in their circulation; so, in the case just quoted, the value of the importation of negroes depended upon their sale, and the transaction between the parties aided their sale, and in that way encouraged importation. The fact was undoubtedly true, yet it did not render the contract void. The illegality consisted in their importation, and not in their use after importation; so the illegality consisted in the issuing of the treasury notes, and not in their use after they were issued. If balls, which had been shot in battle, had been found and sold, it might as well be said that (209) the consideration was illegal, because they had been made for and used in the rebellion. In Coolidge v. Inglee, supra, the case was that in the War of 1812 a citizen of the United States bought goods of the enemy, contrary to law, and brought them to the United States and sold them, and when he sued the purchaser for the price, the defense was set up that it was unlawful for the plaintiff to buy the goods, and that, therefore, the consideration of the contract was illegal; but the court held the contrary. It is absurd to suppose that the goods *Page 149 
in that case, or the treasury notes in this, were illegal. Were not the goods precisely the same as if they had been bought of a friendly power? Certainly! The goods were not illegal, but the trading with the enemy was.
This is the first time that this very important question has come before us for consideration. It has been well argued and patiently considered. We are not without important aid in determining the question. It is well considered by the Convention of 1865, and by the Legislatures which have since assembled. The Convention was prompt to declare that the rebellion and everything in aid of it was illegal. And it declared void all contracts which were in aid of it; but it did not declare void all contracts, the consideration of which were Confederate treasury notes; on the contrary, it plainly declared such contracts valid; that all contracts made during the war shall be deemed to be payable in money of the value of said notes; and directed the Legislature to prepare a scale to show, not that said notes were of no value, but to show what their value really was. And the Legislature did prepare such a scale. Now, if the defense set up in this case be good, then the Convention and Legislature ought to have made short work of it, and declared that all contracts should be deemed to be payable in Confederate treasury notes; and that such notes were illegal as a consideration to support a contract, and therefore that all such contracts were void. I do not consider the question, whether the (210) Convention or the Legislature had the power to validate or invalidate contracts, but their action is cited to show that those bodies regarded these notes as valuable considerations to support contracts. We thus have the concurrent opinions of the Judiciary, the Convention and the Legislature of the State, and an uninterrupted train of decisions both in England and the United States on kindred subjects, that Confederate treasury notes are not illegal considerations in contracts between citizens, unless it was the intent of the parties to the contract thereby
to aid the rebellion.
Our attention was called to an abstract of a case decided in Tennessee, in which Confederate treasury notes were held to be an illegal consideration. We regret that we have not the case at large. It seems to have been decided upon the ground that it was the money of rebels. Suppose it had been the coin of rebels. Doubtless there is some better reason than that assigned in the abstract which we have given. For it appears to be anencouragement to rebels! that they should be exonerated from a performance of their contracts, because of their participation in so great a mischief. If the Judiciary could be influenced at all by this consideration, it would hold them to a more rigid performance of all their undertakings. As a court, we neither favor nor oppress rebels, *Page 150 
but hold the scales of justice even. But we forbear further comment, lest we do our sister court injustice.
PER CURIAM. Decree for complainant.
Cited: Emmerson v. Mallett, post, 237; Turley v. Nowell, post, 302;Harrell v. Watson, 63 N.C. 460; Martin v. McMillan, Ibid., 487; Garrettv. Smith, 64 N.C. 95; Kingsbury v. Lyon, Ibid., 129; Smitherman v.Sanders, Ibid., 526; Haughton v. Meroney, 65 N.C. 125; McKesson v. Jones,66 N.C. 264; Wooten v. Sherwood, 68 N.C. 338; Neaves v. Mining Company,90 N.C. 415; Hargrove v. Adcock, 111 N.C. 171; Lupton v. Lupton,117 N.C. 31; Fulcher v. Fulcher, 122 N.C. 102; Combes v. Adams,150 N.C. 68; Stephens v. Lumber Co., 160 N.C. 109.
(211)